ORDER DISALLOWING TELEPHONIC RELINQUISHMENT
KATHARINE ENGLISH, Chief Judge.
ISSUE:
Where the Tribal Court is presiding over a voluntary termination of parental rights, can a relinquishment of parental rights to an Indian child be given telephon-ically? For the reasons stated below, and allowing for possible future exceptions, the Court concludes it cannot.
BACKGROUND:
On March 21, 2001, this Court held a telephonic conference regarding the Stipulated Oral Motion to conduct a telephonic hearing for the purpose of taking mother’s relinquishment of her parental rights. Several reasons supported the motion, including that the mother is in jail in Inverness facility in Portland and does not want to be transported, that she does not want to appear in Court where certain persons will be present, and that the process of transfer is cumbersome, expensive, and could require that the mother be held in a less amenable facility in Polk County awaiting the hearing date.
The procedure was proposed as follows. The Judge, Tribal Attorney, Court Clerk and the Tribal Court Administrator be present in the Courtroom. The mother, her attorney, the ICW Program caseworker, and a notary public would be present in the jail facility in a small conference room. The attorneys for the children would be in their offices, present by telephone. The Judge would make proper inquiry of the mother. The mother would, at the jail facility, and in the presence of her attorney, the ICW Program caseworker, and the notary public, sign a release and surrender and a relinquishment of parental rights. The Judge would thereafter accept the release and surrender and the relin *40 quishment, and certify that it was not coerced but was willingly given.
In considering the Motion for this procedure, the Court was reluctant to approve it, believing that the Indian Child Welfare Act and the Tribal Indian Child Welfare Ordinance, read together, and interpreted in the light most consistent with the intent of the law, require that the Judge be actually present during the signing, in order to query the relinquishing parent closely. By watching the parent’s demeanor and interaction with lawyer and caseworker, and by listening to the mother’s responses to judicial questions, the Court could then confidently make a finding that the relinquishment of parental rights was willingly and freely given, without coercion.
During the course of today’s conference the attorneys assured the Court that all were willing to proceed as proposed, that the mother would waive any future objection to any procedural irregularities. The Court was further assured that Judge Michael Loy of Multnomah Co. had taken such ICWA relinquishments telephonically before, and that he had likely researched the matter exhaustively before so doing. This Court was reluctantly persuaded, and agreed to tomorrow’s telephonic hearing.
Since then the Court has consulted with Judge Loy, who has not, to his recollection, ever taken an ICWA relinquishment, telephonically or otherwise, much less researched the matter. The Court also consulted other judges, staff at the National Indian Child Welfare Association, and staff at the Native American Program of Oregon Legal Services. The Court found no support for, or approval of this procedure. In addition, the Court conducted further research into the etiology of the Indian Child Welfare Act, and the intent behind the provision at issue.
The Court is troubled by the fact that, if a relinquishment is given telephonically, the Judge will be unable to witness the mother’s demeanor, attitude, body language, and facial expressions during the Court’s instructions to mother, and during her signing of the relinquishment forms. Another factor which troubles this Court is this. Following the telephone hearing today, the Court administrator wras asked if the Court has relinquishment forms for the mother to sign. The Court does not. What seems to be so is that the mother and her attorney have not yet had an opportunity to read the forms she will be signing, nor has the attorney apparently had an opportunity to discuss those forms with her. If this is so, a hearing during which mother signs those forms tomorrow seems precipitously premature.
ANALYSIS:
No party forwarded the proposition that the Indian Child Welfare Act does not govern Tribal Court relinquishment proceedings. However, the ICWA is, at least, instructive. It provides that:
“Where any parent ... consents to ... termination of parental rights, such consent shall not, be valid unless executed in writing and recorded before a, judge of a court, of competent jurisdiction and accompanied, by the presiding judge’s certificate that the terms and consequences of the consent were fully explained in detail and were fully understood by the parent ... Execution of consent need not be in open court 'where confidentiality is requested or indicated.” Indian Child Welfare Act Sec.l913(a)
The Bureau of Indian Affairs Guidelines, in its commentary to this section, gives little guidance, but does instruct:
“This section provides that consent may be executed before either a judge or a magistrate ... The statement that the consent need not be in open court where confidentiality is desired was taken direct *41 ly from the House Report on the act.” BIA Guidelines E.l.
The Tribal Code does not require a written relinquishment of parental rights, nor does it give specific direction to the procedure for the giving of voluntary consent to termination of his or her parental rights. The only persuasively analogous direction given is that:
“A parent may waive in writing, before a judge of the court, the right to appear at a, hearing, the right to not ice of hearing, or both, and the Court shall assure that such ivaiver is knowing and, voluntary.” Confederated Tribes of the Grand Ronde Community of Oregon Indian Child Welfare Ordinance Sec. 7.13(¿ )(1)(C)
The relinquishment of parental rights to a child is a very serious, permanent decision, by which a parent gives up a most fundamental right-that of being a parent to his or her biological child. The matter must be treated with the utmost care. Particularly in the case of the surrendering of an Indian child, given the historical loss of Indian children by coercion, fraud, or ignorance, a Court must make certain findings that the parent is not coerced, and is making this grave decision willingly.
To make those findings a Judge must be able to see the parent as s/he signs her/his relinquishment papers. As the mother’s attorney in this case said, the process is fraught with stress and sorrow, the parent often needing breaks, and time to talk; surely the Court must witness that process to evaluate the parent’s attitude and intent.
As to waiver of a challenge to any irregularities, it is well-known that such waivers are often ignored by the litigant after the case is concluded. Habeas corpus and incompetency of counsel cases are replete with refutations of such waivers. Further,
the waivers are often not valid or enforceable.
There can be no legitimate reason to take such risks in a case that involves the future life of these children. Failure to follow indisputable proper form could subject this child, the adoptive parents, the biological parent, the attorneys and the Court to future, drawn-out litigation. When such a scenario can easily be prevented by the Court in the first instance, it must be.
An exception to actual presence of a parent in the Courtroom might be made. For example, a video conference hearing might resolve the issues. Or there may be some other method devised by which a Judge could actually assess the parent vi-süally. Lawyers are not precluded from developing such proposals.
CONCLUSION:
After careful consideration, the Court concludes that the mother’s relinquishment of her parental rights to her Indian children must be executed in the presence of the Tribal Court Judge.
ORDER:
1. The pre-trial hearing to take relinquishment of parental rights set for March 22, 2001, is canceled.
2. The Termination of Parental Rights trial set April 2-9, 2001 is cancelled.
3. The pre-trial hearing to take relinquishment of parental rights is re-set to April 9, 2001, at 1:30 PM. The mother shall appear in person.
4. All unnecessary persons will be excluded from the Courtroom at the mother’s request.
5. The ICW Program shall have furnished the proper release and surrender relinquishment forms to the mother and her attorney in sufficient time prior.to the *42 heating to allow the attorney to prepare his client adequately for the hearing.